UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Natalie S. Finch and David L.
Paul, on behalf of themselves
and all others similarly situated,[1]

              Plaintiffs,             **MEMORANDUM OPINION
AND ORDER**
     v.                                   Civil No. 06-296 ADM/RLE

Unum Life Insurance Company
of America,

              Defendant.

_____

John J. Curi, Esq., Curi Law Office, Minneapolis, MN, on behalf of Plaintiffs.

Terrance J. Wagener, Esq., Krass Monroe, P.A., Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On August 21, 2006, oral argument before the undersigned United States District Judge was heard on Defendant Unum Life Insurance Company of America's ("Unum") Motion to Dismiss [Docket No. 13]. At oral argument, the Court asked the parties to submit additional briefing. The case was taken under advisement on September 15, 2006. In their Third Amended Complaint [Docket No. 18], Plaintiffs Natalie S. Finch ("Finch") and David L. Paul ("Paul") (collectively, "Plaintiffs") allege violations of the Employee Retirement Income Security Act ("ERISA"). Specifically, Plaintiffs allege claims for enforcement/clarification of rights, 29 U.S.C. §§ 1132(a)(1)(B); equitable relief, 29 U.S.C. §§ (a)(3)(A) and (B)(i), (ii); and breach of

---

[1] Although the caption of the Third Amended Complaint is styled as one for a class action, no motion to certify a class has been brought. Plaintiffs Paul and Finch have two identical claims, and Plaintiff Paul alone has a third claim for attorney's fees improperly included in his overpayment amount.

fiduciary duty, 29 U.S.C. §§ 1104 and 1109. For the reasons set forth herein, Unum's Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs Paul and Finch are disabled, and receive long term disability benefits through group insurance policies issued by Defendant Unum to their employers. Third Am. Compl. ¶¶ 1, 22-24. Finch is insured by a Unum policy issued to Catholic Health Initiatives in Colorado. Id. ¶ 34; Bradley Aff. [Docket No. 23] Ex. A.[2] Paul is insured by a Unum policy issued to Infirmary Health System, Inc. in Alabama. Third Am. Compl. ¶ 34; Bradley Aff. Ex. B. Both policies provide that "Unum will subtract from your gross disability payment the following deductible sources of income . . . 3. The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under: the United States Social Security Act." Bradley Aff. Exs. A at 16-17; B at 16. Both policies also provide that "Unum has the right to recover any overpayments due to . . . your receipt of deductible sources of income. You must reimburse us in full. We will determine the method by which the repayment is to be made." Bradley Aff. Exs. A at 6; B at 6. Both policies also have a section entitled "**WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR DEDUCTIBLE INCOME BENEFITS?**" which provides:

---

[2] Undisputed documents that are not physically attached to a complaint but are "embraced by the pleadings" may be considered by a court without converting a motion to dismiss to one for summary judgment. See, e.g., Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997); Thompson v. Olsten Kimberly Qualitycare, Inc., 980 F. Supp. 1035, 1036 n.1 (D. Minn. 1997). In this case, both parties have filed affidavits that attach exhibits that were not attached to the Third Amended Complaint, but were generally discussed or referenced in it. Other than the insurance policies, these exhibits were not relied upon, and Unum's Motion is not converted to one for summary judgment.

> When we determine that you may qualify for benefits under Item(s) 1, 2 and 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amounts if such benefits:
>
> - have not been awarded; and
> - have not been denied; or
> - have been denied and the denial is being appealed.
>
> Your Long Term Disability payment will NOT be reduced by the estimated amount if you:
>
> - apply for the disability payments under Item(s) 1, 2 and 3 in the deductible sources of income section and appeal your denial to all administrative levels Unum feels are necessary; and
> - sign Unum's payment option form.  This form states that you promise to pay us any overpayment caused by an award.
>
> If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:
>
> - of the amount awarded; or
> - that benefits have been denied and all appeals Unum feels are necessary have been completed.  In this case, a lump sum refund of the estimated amount will be made to you.
>
> If you receive a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given.  If no time period is stated, we will use a reasonable one.

Bradley Aff. Exs. A at 18-19; B at 18.

Paul and Finch, and their dependent children, were awarded disability benefits from the Social Security Administration ("SSA"), including a monthly benefit amount and a lump sum payment for back benefits.  Third Am. Compl. ¶¶ 41, 62-63, 66; Curi Aff. [Docket No. 30] Exs. A, B.  Paul's award letter stated that he would receive $1,201 each month beginning November 2003, and approximately $31,988 in past due benefits.  Third Am. Compl. ¶¶ 66, 70; Curi Aff. Ex. A.  The letter also stated that $5,300 of Paul's benefits would be withheld and paid to his lawyer for attorney's fees.  Third Am. Compl. ¶ 66; Curi Aff. Ex. A.  Paul's children's award

letters stated that they would receive a combined total of $18,413 in past due benefits, and a combined monthly benefit payment of $612 beginning February 2004.  Third Am. Compl. ¶¶ 66, 70; Curi Aff. Ex. A.  Finch's award letter stated that she would receive $16,764 in past due benefits and $816 each month beginning March 2004.  Third Am. Compl. ¶¶ 54, 62-63; Curi Aff. Ex. B.  Finch's child's award letter stated that she would receive $8,774 in past due benefits and $407 each month beginning April 2004.  Third Am. Compl. ¶¶ 54, 62-63; Curi Aff. Ex. B.

Upon receipt of confirmation that Plaintiffs were awarded SSA benefits, Unum informed Plaintiffs that it would reduce their monthly benefits from Unum by the amount of SSA monthly benefits received.  Third Am. Compl. ¶¶ 3, 39-42.  Unum further informed Plaintiffs that the receipt of SSA benefits resulted in Unum overpaying long term disability payments to Plaintiffs, and Plaintiffs would have to repay all previously paid benefits that resulted in overpayment.  Id. ¶¶ 4, 5, 39, 43-44, 53.  Unum informed Paul that he had an overpayment balance of $46,416.38, and requested "that you reimburse us in full at this time in accordance with the contract."  Id. ¶¶ 5, 70; Curi Aff. Ex. C.  Unum informed Finch that she had an overpayment balance of $26,090.66, and that if it did "not receive full reimbursement by [August 28, 2004], we regret that we will have to take further action."  Third Am. Compl. ¶¶ 5, 54, 63; Curi Aff. Ex. C.  Paul and Finch disputed the overpayments, and therefore Unum did not receive payment in full by the dates requested.  See Curi Aff. Exs. D-O.

Before receiving SSA benefits, Finch received monthly long term disability payments of $1,417.42 from Unum.  Third Am. Compl. ¶¶ 3, 61; Curi Aff. Ex. L.  After Finch began receiving monthly SSA benefits, Unum reduced Finch's monthly long term disability payment to $235.42.  Id. ¶¶ 3, 61-62; Curi Aff. Exs. C, L.  Unum informed Finch on September 2, 2004, that

"if full payment of $26,090.66 is not received within 14 days, we regret that we will have to begin applying [your] full monthly benefit to the overpayment and refer [your] file to our Recovery Unit to pursue full reimbursement." Third Am. Compl. ¶ 54; Curi Aff. Ex. M. Unum then began applying Finch's monthly long term disability payment to her alleged overpayment rather than paying it to Finch. Third Am. Compl. ¶¶ 6, 37, 53-54, 61.

Before receiving SSA benefits, Paul received monthly long term disability benefits payments of $1,787.76 from Unum. Id. ¶¶ 3, 65; Curi Aff. Ex. S. Upon his receipt of monthly SSA benefits, Unum reduced Paul's monthly long term disability benefits payment to $178.78. Third Am. Compl. ¶¶ 3, 56, 65; Curi Aff. Ex. H. When Paul did not repay the overpayment by the specified date, Unum began applying his monthly benefit to the alleged overpayment rather than paying it directly to Paul. Third Am. Compl. ¶¶ 6, 37, 53, 56, 70.

Since filing their Third Amended Complaint, Plaintiffs have withdrawn some of their claims and legal theories. Plaintiffs now argue that Unum has violated ERISA by (1) improperly calculating Paul's overpayment by including $5,300 in attorney's fees that Paul never received nor was entitled to receive; (2) not providing Plaintiffs with amended W-2 forms or amended tax information; and (3) demanding immediate lump sum payment of the overpayments rather than allowing Plaintiffs to repay the overpayment on a pro-rated basis. Id. ¶¶ 15, 17, 49, 67-68, 97.

### III. DISCUSSION

**A.    Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most

favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B.     Attorney's Fees**

Paul asserts that his overpayment amount improperly includes $5,300 in attorney's fees that he never received nor was entitled to receive from the SSA. Paul argues that Unum's repeated refusal to correctly calculate his overpayment amount by subtracting the $5,300 entitles him to injunctive relief, forcing Unum to correctly calculate overpayments. Unum responds that this claim fails for lack of standing and that it should properly be alleged under a different provision of ERISA. Unum avers that it initially included the $5,300 in the overpayment amount because Paul failed to provide proof that he paid such amount in attorney's fees. Unum further avers that once Paul provided the requested proof, it reduced the amount of the overpayment accordingly. Paul argues that Unum was aware of the amount paid to Paul's attorney in attorney's fees long before it allegedly subtracted the amount from Paul's overpayment total, yet continually refused to recalculate Paul's overpayment amount despite Paul's requests. In addition, Paul has not seen any type of documentary evidence until very recently that Unum has in fact credited the $5,300 against his overpayment amount.

Unum may have already credited the $5,300 in attorney's fees against Paul's

overpayment amount. However, on a motion to dismiss when the Court is confined to an examination of the pleadings, Paul has sufficiently stated a claim concerning attorney's fees to survive Unum's Motion to Dismiss. Paul has standing to assert this claim because he has suffered an injury in fact—Unum's failure to credit the $5,300 in attorney's fees, an amount Paul never received nor was entitled to receive under the policy, is a sufficiently concrete, particularized, and imminent injury because it would have resulted in Paul repaying an amount greater than what he owed, or Unum withholding a greater amount in monthly benefits than what it was entitled to. See Planned Parenthood of Mid-Mo. and E. Kan. v. Ehlmann, 137 F.3d 573, 576-77 (8th Cir. 1998).

After a review of Varity Corporation v. Howe, 516 U.S. 489 (1996); Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204 (2002); and Sereboff v. Mid Atlantic Medical Services, Inc., 126 S.Ct. 1869 (2006), the Court concludes that Paragraph 114 of the Third Amended Complaint states a claim under 29 U.S.C. § 1132(a)(1)(B), which provides: "A civil action may be brought by a participant or beneficiary . . . to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Paul is essentially asking for his rights under the plan to be enforced, as he is asking for his overpayment amount to be correctly calculated. If Unum determines it has improperly included $5,300 in Paul's overpayment amount, Paul will either owe less of a lump sum amount to Unum or will resume receipt of monthly benefit payments sooner than currently expected upon satisfaction of a slightly smaller overpayment amount.

**C.     Demand for Lump Sum Payments**

Both Plaintiffs also argue that Unum is prohibited from collecting any overpayment in a

lump sum amount by the language of the policies and the doctrine of recoupment. Plaintiffs argue that Unum's attempt to collect the overpayments in a lump sum amount is a violation of its duties to Plaintiffs, thus resulting in Plaintiffs stating a viable claim for equitable relief.

### 1.     Policy Language

Plaintiffs rely on the following language in the policies for their argument: "If you receive a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one." Bradley Aff. Exs. A at 19; B at 18. However, this language is taken from the section of the policies in which Unum informs its insureds that it may estimate its insureds' entitlement to benefits such as social security and will then reduce the amount of long term disability benefits payable to its insureds by those estimates. The quoted language explains how Unum will treat any later lump sum payment such as social security received by its insureds in terms of determining how much Unum has underpaid or overpaid its insureds. The quoted language is not directed toward explaining how insureds may repay an overpayment back to Unum. Instead, the relevant language is "Unum has the right to recover any overpayments due to . . . your receipt of deductible sources of income [such as social security]. You must reimburse us in full. We will determine the method by which the repayment is to be made." Bradley Aff. Exs. A at 6; B at 6. This language gives Unum the discretion to determine how repayments of overpayments will be made, and does not prohibit Unum from demanding that repayments be made by lump sum payments rather than pro-rated over time. Consequently, Unum is not prohibited by the language of its policies from collecting overpayments in a lump sum.

### 2. Recoupment Doctrine

Plaintiffs argue that the recoupment doctrine limits Unum's ability to recover overpayments. Recoupment is:

> [T]he right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to plaintiff's claim. A party may not use recoupment to recover damages from the other party but only to reduce a liability that would otherwise be owed to the other party.

Aetna Life & Cas. Co. v. LaPierre (*In re* LaPierre), 180 B.R. 95, 99 (Bankr. D.S.C. 1994). Essentially, Plaintiffs argue that due to the recoupment doctrine, Unum can only recover overpayments by withholding monthly benefits due to Plaintiffs, and not by demanding a lump sum payment. Plaintiffs' argument is a misunderstanding of the doctrine of recoupment. While the case law cited by the parties establishes that recoupment by withholding benefit payments is one possible method by which Unum can recover overpayments, it does not establish that such recoupment is the only method. See, e.g., Aetna Life Ins. Co. v. Bram (*In re* Bram), 179 B.R. 824, 826-27 (Bankr. E.D. Tex. 1995) (holding insurer may recoup overpayment of long term disability benefits to insured despite insured's bankruptcy filing); Long Term Disability Plan of Hoffman-La Roche, Inc. (*In re* Hiler), 99 B.R. 238, 244-45 (Bankr. D.N.J.) (same); see also Dillard's Inc. v. Liberty Life Assurance Co. of Boston, 456 F.3d 894, 900 (8th Cir. 2006) (affirming district court's award to insurance company of reimbursement of overpayments resulting from insured's receipt of social security disability benefits). Because there is nothing in either the policies or the recoupment doctrine that prevents Unum from demanding a lump sum payment, Unum has not breached its fiduciary duties regarding the manner in which overpayments are to be repaid. Plaintiffs' claim regarding Unum's demand for lump sum payments is dismissed as lacking legal support.

**D.       Amended Tax Information**

In several places in their Third Amended Complaint, Plaintiffs allege that Unum never provided them with amended W-2 forms to reflect the amount of "income" repaid to Unum. Third Am. Compl. ¶¶ 55, 58, 97.  Plaintiffs' Third Amended Complaint alleges that Unum's failure to issue amended W-2 forms is evidence the amount Plaintiffs must repay was over-calculated by not taking into account income taxes paid.  Id. ¶ 49.  Plaintiffs rely on the W-2's referenced in their Third Amended Complaint as evidence that they need not repay any sum to Unum because the money received was income, not a loan.  Id. ¶¶ 96, 98.  However, in their "Cause of Action" section, Plaintiffs make no specific demand for relief with respect to the un-amended W-2 forms.  Id. ¶¶ 112-25.  Nonetheless, in their Opposition Memorandum, Plaintiffs allege that Unum's policies obligated it to issue amended W-2 forms and notify claimants how much of their repayment was applicable to prior tax years.  Opp'n Mem. [Docket No. 29] at 11-12.  Hence, Plaintiffs ask for "[d]eclaratory relief regarding . . . whether Unum is required to furnish post-benefit repayment income tax notification data under their Policies," and "[i]njunctive relief . . . compelling Unum to provide accurate tax notice following benefit repayment."  Id.

Unum argues that Plaintiffs' allegations on the W-2 issue are not pled in their Complaint. Unum further argues that even if they were, IRS regulations preclude Unum from issuing amended W-2's for some years, the "Claimant Questions" form that is not part of the policies does not obligate Unum to issue amended W-2's or notification, and Unum has provided sufficient notification of the disability benefits it recovered.

Unum is correct that Plaintiffs have not stated a sufficient claim for relief in their

Complaint that corresponds with their current arguments regarding notification of amended tax information. Even if properly pled, such a claim would fail because Unum was under no obligation to provide such notification, and has not breached any duty to Plaintiffs. Plaintiffs cite as support for their argument to a "Claimant Questions" form that states in relevant part:

> Q: What happens when I receive a Social Security or Worker's Compensation Award and make a repayment to UnumProvident?
>
> A: Any portion of the refund that applies to the benefits paid in the current year will be reduced from your current year W-2. You will receive notification from UnumProvident as to how much, if any, of the refund is applicable to a prior year. You may take this prior year amount as a deduction in your current year tax return. Please contact your tax preparer regarding this deduction and refer him/her to IRS Publication 525, the section entitled "Miscellaneous Taxable Income-Repayments." With this information, your tax preparer can appropriately deduct the repayment.

Curi Aff. Ex. P. While amended tax information from Unum to Plaintiffs would be helpful, there is no indication that Plaintiffs are unable to obtain this information or do not have the appropriate information through documentation of the amounts being withheld. Also, Unum's statement in a question-and-answer form regarding what it will provide does not give rise to a legal obligation under the issued policies. Plaintiffs' claim regarding notification of amended tax information is dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Unum Life Insurance Company of America's Motion to Dismiss [Docket No. 13] is **GRANTED** as to Plaintiff Natalie S. Finch, and **GRANTED IN PART AND DENIED IN PART** as to Plaintiff David L. Paul.

The only surviving issue in this case is the matter of whether Plaintiff Paul was credited with the $5,300 in attorney's fees.  This is a simple fact issue which should easily be resolved by an accounting of the funds disbursed to Plaintiff Paul.  The documentation provided by Unum can not be considered on a motion to dismiss.  If the parties to the suit can not resolve this matter by an examination of the records, a status conference with Magistrate Judge Raymond L. Erickson should be scheduled before any discovery is pursued.  The parties should contact Judge Erickson no later than January 18, 2007.  If the parties are able to resolve the matter without a status conference, they should notify this Court.

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 18, 2006.